McKinney, J.,
delivered the opinion of the court.
This bill is brought for the recovery of two slaves, Edy and Moab. The material facts of the case are as follows : The complainants are the children and grand-children of John W. Finch and his wife Judith, who intermarried in the state of North Carolina in 1819. Shortly after their marriage, William Hoekaday, the father of said Judith Finch, placed in their possession the female slave Edy, in the bill mentioned; and in their possession said slave and her increase remained until the year 1833. In the spring of the year 1826, John W. Finch and family removed to Weakly county, in this State, where he continued to reside till 1846, in which year both he and his wife *560 died. On the 5th of April, 1829, said William Hockaday made his last will and testament, and died about the middle of the same month. In said will is contained the following bequest:
“ I will that all the property that I have let all my different children have heretofore, to continue as their own, except the negro Edy and her increase, which I lent to my daughter Judith Finch. The said negro Edy and her increase 1 lend to my daughter, Judith Finch, during her natural life ; and after her death, to be equally divided amongst all her children; and should any of her children be dead before such division, leaving an heir or heirs, I wish such heir or heirs to inherit their parents’ portion of said property.”
In March, 1833, the slave Edy and certain of her increase, were sold and conveyed by said John W. Finch, absolutely to the defendant Rogers, who afterwards sold the boy, Moab, to the other defendant.
The record shows that the will of said William Hockaday was contested in the court of pleas and quarter sessions of Granville county, North Carolina; the result of which was, that the will was established. But it appears that the executor nominated in the will declined to qualify, and that there is no personal representative of the testator’s estate.
Upon the foregoing state of facts, the right of the complainants to recover said slaves is resisted by the defendants on several grounds. First, it is said the slave Edy was placed in the possession of Finch and wife, originally as a gift, and not as a loan; and Finch having held possession of said slave and her increase, in this State, for three years before the death of Hockaday, adversely to the latter, the title became vested in him under the statute of limitations. Secondly, that if it were merely a loan, as the possession remained in Finch for more than five years before the death of said Hockaday, and the loan not having been declared in writing, proved and recorded, *561 as required by the act of 1801; such loan was invalid as to the creditors of Finch and purchasers from him. And, thirdly, that there having been no assent of the executor to the bequest under which complainants claim, they have no title upon which a suit can be maintained for the recovery of said slaves, either at law or in equity.
1. Notwithstanding' some discrepancy in the evidence, the weight of proof establishes beyond all question, that the transaction, in its origin, was a mere verbal loan of the slave to Finch and wife; and that it was recognized and treated as such by both parties, at least until after the removal of Finch to Tennessee ; and, as we incline to think, until the death of Hackaday. Being a loan in its inception, by the North Carolina act of 1806, and the judicial decisions thereon, Finch stood in the relation of a mere bailee of the slaves; and as such, his possession could not, in law, be adverse to the bailor, at least not until an open denial or repudiation of the character of bailee, and a knowledge of such denial brought home to the bailor. If, then, it were conceded that, after the removal of the slaves to Tennessee, Finch set up an adverse claim in hostility to the right of Hockaday, it would avail the defendants nothing, because it is not pretended that if the fact were so, Hockaday had any knowledge thereof during his life. The case of McKissick vs. McKissick, 6 Hum., 72, is not an authority for the defendant. The principle of that case is perfectly consistent with the principle laid down in the case under consideration. The point of difference in the facts between that ease and this, is, that in the present case, the slaves were brought into this State, and within the operation of our laws impressed with the character of bailment, being then held by Finch, in law and in fact, in subordination to the right and title of, the proper owner. But, in the case referred to, McKissick was, in point of fact, in adverse possession of the slaves in North Carolina, and brought them within the juris *562 diction and operation of the laws of Tennessee, claiming to hold in direct hostility to the right of Sallard. And, again, the proof in that case established a verbal gift of the slaves from Sallard to McKissick, if not at the time of the delivery of the slaves, at least in a year or two afterwards, and some fifteen years before the removal of the slaves to Tennessee.
2. Has the act of 1801 any application to the present case? Undoubtedly every State has entire dominion, in point of sovereignty and jurisdiction, over the property of foreigners situate within its own territory, and may regulate its transfer, subject it to process and execution, and provide for and control the uses and disposition of it to the same extent that it may exert its authority over the property of its own citizens. And this, upon the principle, that what the law protects it has a right to regulate. A foreigner who sends his property within a jurisdiction, different from that where he resides, impliedly submits it to the rules and regulations in force in the country where he places it. Story’s Con. of Laws, sec. 338, 447, 550.
The question here is upon the construction of the provisions of the act in question. Did the Legislature intend anything more than to regulate the right of property and prescribe a rule for our own citizens ? We think not. It is not to be presumed that the Legislature intended to regulate the rights of persons, or things, without the limits of its own territory, however indisputable their authority to do so, and it should not be so held, unless the words of the statute clearly import that such was the intention. Such was the exposition of this statute, in the case of Loving vs. Hunter, (8 Yerg., 4, 32,) in which we are disposed to acquiesce ; and, therefore, we hold that the act does not apply to a loan of property made in another State or country, where the property was at the time situate.
The case of Gilliam, vs. Spence, (6 Hum. 163,) is not incon-isistent with this view of the present case. In that case, *563 Gilliam, (in whose possession the slaves were placed in Virginia,) at the time of, and prior to the transaction, was a citizen and resident of Tennessee. The slaves were placed in his possession with the express purpose and intention, on the part of both parties, that he should immediately remove them to this State, where they were to remain. And the case supposes that the parties contracted with reference to the law of this State, by which their rights, respectively, were to be regulated.
3. Are the complainants disabled to maintain this suit, for want of the executor’s assent to the bequest? We think not. It is certainly true, as a general rule, that the assent of the executor is necessary to perfect the title of the legatee to a bequest of chattels, whether personal or real, and whether specifically or generally bequeathed; and without such assent, possession of the chattel cannot be taken by the legatee. This is for the protection of the executor, upon whom the law devolves the personal estate for the payment of the debts of the deceased, and who is responsible to creditors to the extent of the whole personal estate. But the title of the legatee is derived from the will, and is not created by the assent of the executor; consequently, such assent has only the effect of perfecting the title derived from the will; or, in other words, such assent is only necessary to entitle the legatee to demand or sue for the recovery of the chattel, if it be in the possession of another who wrongfully withholds it. From these principles it would seem to follow, that, in a case like the present, where the legatee was placed in possession of the chattel, specifically bequeathed by the testator in his life-time, and there are other assets sufficient for the payment of debts, the assent of the executor is not absolutely necessary in order to a complete legal title-in the legatee. In such case, the legatee being actually in possession, and that, too, by the act of the testator in his life-timé, the reason of the rule which requires the *564 executor’s assent, does not seem to apply. The executor, in the case stated, would not be chargeable with such chattel; it would not be assets in his hands; nor could he maintain any action against the legatee for its recovery, except in the event of a deficiency of assets to discharge the debts of the estate, after having fully administered the residue of the personal estate.
But, again, it is well established that a person appointed an executor, may assent to a legacy before he proves the will; and having once assented, he cannot retract such assent after-wards, unless, perhaps, the presentation of debts, unknown at the time such assent was given, should occasion a deficiency of assets. And it is equally well settled, that where a legacy is limited to several persons in succession, the executor’s assent to the first taker, will be considered an assent to those who are to succeed in remainder, because the several interests constitute but one entire estate.
If, therefore, it were necessary, in order to support the title of the complainants in the present case, to establish the executor’s assent, such assent on the part of the person appointed in the will (who, although he has not qualified, has not renounced or abandoned the purpose of qualifying, on the falling in of the life-estate of the widow of the testator,) to Mrs. Finch, the first taker, might well enough be presumed under all the circumstances of the case.
But the complainants need not resort to such presumption, as, upon the former ground, we think their title is sufficient to maintain their bill. For the general principles assumed in this opinion, see 1 Roper on Legacies, 4th ed., 842 to 856; 2 Williams on Ex’rs., 2d ed., 980 to 983.
The decree of the chancellor affirmed.